Arguments not to exceed 10 minutes for each defendant, 20 minutes for the plaintiffs. Ms. Jacobs for the appellants. Thank you, good morning to the judges here and to Judge Cook. My name is Elizabeth Jacobs, I represent Shan Shan Do. I'd like to reserve three minutes of time for my rebuttal and also for argument on the cross appeal, the sentencing issue. I want to address the sufficiency issue. There are two issues that I want to address under sufficiency. The second one is going to, I'm going to talk about the intent to convert and that it was absent in this case. The first issue I want to talk about has to do with trade secrets. If the documents that Ms. Do possessed were not trade secrets, then they do not deserve federal protection, federal statutory protection. There is a test for whether a document is a trade secret and that's found in subsection 1839 of the statute and one of the issues that you have to show is whether the company, there are three, whether the company took reasonable measures to protect the information, whether the documents were not generally known to the public, and whether the information derives independent economic value from being secret. And I want to talk about that first one, about whether reasonable measures were taken by GM. GM did have a policy and their policy was that the documents that they possessed were proprietary, that they were classified either as non-classified or classified material. Under classified there were two, there were two classifications. One is GM secret and the other is GM confidential. If the document was GM secret, it was mandatory that it be encrypted. If it was going to be used in any kind of electronics, if it was going to be sent by email, it was mandatory that it would be encrypted. In confidential documents, I think it was a little bit more, there was a little bit more room to move. In this case, not one document was marked as secret, none of the documents were encrypted. So although GM has a policy, it is a policy that is not enforced and therefore it can't be reasonable because the statute said it had to have taken reasonable measures. And a policy in name only is not a real, is not a reasonable policy. The evidence at trial suggests that GM teaches constantly their employees about their security policy and they tell them that if it's secret, it's encrypted and you cannot disclose it. So the question, one of the questions that you're faced with is what is an employee who has been trained to know that if it says secret on it and it's, even if it's not encrypted, if it says secret, you can't disclose it. And no document in front of her had the words secret on it. The policy, help me understand a little bit better how the system operated because isn't part of the reasonable measures to keep the information secret, the generic things that GM did in the system itself. You're talking about the sharing of documents within the protected system. Yes. Is that correct? So you're talking about whether they have to be encoded even when they're shipped internally. But wasn't there a significant amount of external protection from others to get into the system? And is that not a qualifying explanation under the law in your estimation? Are you referring to things like it was password protected, the information was, it was a locked facility and there was a badge? Firewall protections, the kind of standard things that are done to prevent someone in the public, which is part of the issue here, from accessing those documents. I think this is a very different case. I mean, you're right. There were all of those procedures in place, but those are the kinds of procedures that are used to protect, and I think I refer to this in my brief as 20th century security procedures for 20th century technology. So you could have all the locks and all of the secret codes that you want in a computer room and put a computer in there, but if I can dial up that computer and get information off that computer, there hasn't been any reasonable measure taken to protect GM secrets. Did the jury find in its general verdict the existence of trade secrets? Is that what happened? They would have had to. With an instruction about that? They were, I believe that they were instructed, I believe they were instructed as what makes that a trade secret there had to be reasonable measures. And you're not appealing, you're not contesting the instruction, however? Obstruction? Instruction, no, no. You're contesting the verdict. Yes. Okay. So, you may need to educate me a little more on technology because I'm struggling with, I know it has to be reasonable, but we know at what pace technology changes, and I don't imagine there are many offices, even in large corporate offices, that keep pace. Everyone struggles to do that and it's very expensive. So, I would like you to educate me on what it is the law requires from the technology. I'm looking kind of at my generic list. It's password protected, barred remote access, which is the public issue, firewall protected, internal network from outside intrusion, additional password protections on folders. In addition to the security training, the very thing that's going on is you've got security personnel who purportedly check bags and employees carry it in and out of the building. You've got non-disclosure agreements. No system's going to be perfect. Why do those not rise to the level of indicating a reasonable effort to maintain privacy? I think that if you're a GM and you have a security officer, I think his name was lit in this particular intellectual property officer, that you have, and you have all the engineers in the world at your disposal, that you do try and take reasonable measures to keep up to date. This occurred in 2003. We've had emails and access to computers for 10 to 20 years now. GM did have a policy. They had a policy about thumb drives. We're not sure what it is because GM's policy are not clear. Did you have to have permission to use a thumb drive? Or could you just use a thumb drive and take documents home with you? They understood what 21st century technology was. They just weren't enforcing it. My argument is that if you've got a policy and you don't enforce it, it's not reasonable. They also... Anyone, anywhere who accessed these documents, you could not establish a trade secrets case against any of those individuals because the system is so flawed. Well, it's password protected. There's a need-to-know basis. And in this particular instance, my client came into the... She had authorization for the possession of these documents. So the need-to-know and password protection, that's a reasonable measure. But she had authority. In this particular case, there's a problem because the prosecution tried to use the... tried to take an intent-to-convert and claim that she did not have authority to use the... to have these documents and therefore you can infer an intent-to-convert. However, she did have authority. There's no evidence that she hacked into the system. There is evidence that she... by a man named Slobodan Gatarac who came up from Allied Traps Mission in November. This is so factually intense. I know. Why don't you try to summarize it? Okay. So she had authorization for all of the trade secrets. The problem in this case is that GM allowed its... allowed its personnel to take these documents home with them. And that's not a reasonable measure. They should have been encrypted. I think that the defense expert talked about that. Did you make this argument to the jury? I did not try the case. But did your accountant, defense, whoever made the... Yeah. Did you make this argument to the jury? Judge, I'm trying to think back and I just... the record is so huge that I just can't... It's a jury argument, sort of. Well... If all this is being decided by the jury and the general verdict, is that the kind of thing you would argue to the jury? But if it's an element of the crime, it has to be proven beyond a reasonable doubt. We're saying there was insufficient evidence for the jury... That's a pretty tough standard in it. So then let me go to intent to convert. Well, I think your time's up. Your real life's been on that for about five minutes. So I think we'll have to stop there and you can rely on your briefings. Good morning, Your Honors. Carol Stanier on behalf of Yu Chin. The statute requires in this case that an individual must harbor a specific intent to convert trade secrets knowing that they are trade secrets. The evidence fails to show that Mr. Chin in this case knew that these were trade secrets because, again, the trade secrets were not marked. He was external to the corporation. He was an electrical engineer in the field. He was a professor. And he knows that the information is largely in the public domain. Also, as to that part of the GM-specific application that was not in the public domain, his wife was carrying this information home on a thumb drive. And that would suggest to Mr. Chin that they aren't being treated as trade secrets by GM. He's not an employee. So in contrast to some of the other cases you'll see, he wasn't trained as to these documents. He didn't sign a confidentiality agreement. The Howley case... He got them from... Well, he didn't testify. So, you know, the government argued that he got them from his wife. The Howley case is distinguishable. In answer to one of your questions, could there ever be a trade secrets case based upon this argument? In the Howley case, you had a contract employee that was external to Goodyear sneak in or go into the facility, bring a little camera, and then take pictures of the machine that he needed for his own company. So, yes, there are situations in which this could happen. In terms of the intent to convert, if Mr. Chin knows about GM's trade secrets without an intention to convert that technology, he's not guilty of this offense. The Sue case, HSU, from the Third Circuit, has held that this legislation does not in any way prohibit companies or inventors from using their skills, knowledge, and experience to solve a problem or invent a product that they know someone else is working on. So the statute doesn't prohibit law. Wasn't there also testimony in this case that said that the plan he made for his own personal company could not have done the time... that he had established for it were it not for his use of that information from GM? I understand, but his company did not utilize hybrid technology of GM whatsoever. So there's two different companies. One is this Cherry Motors plan, and that was a plan that was supposed to go to China. It's very clear from the e-mails and from the plan workup itself that that did not contain GM technology. And in fact, they had done an analysis of their plan, which was generated by Dr. Zhao, and they had compared their plan to what GM was using, which had already been to market in the S10 of GM's, and they had found that their plan was better. So they weren't even going to use GM technology in the Cherry Motors plan. And there's really no evidence that in MTI, they were going to use the GM technology either. So what you have in this case with respect to Mr. Chin is that you have someone who is a professor, who is also trying to help his wife, who's not being very productive with her, not being very productive at GM. He's knowing it, okay? So he obviously has access to all this information, and he's knowing it, but the statute requires more. It requires an attempt to convert. And in this case, you also can use the Howley case again to see what is missing here. In the Howley case, the WICO engineer went into Goodyear, and he already had a plan in action, and they actually were comparing their plan to what Goodyear had in terms of the steel radial tire, and there was a swabbing-down device. And what they said, and what the evidence showed is, their plan, the WICO plan, was inferior. So they really needed to get in and see what Goodyear was doing. That's the opposite of what's happening here. Here, they had already determined that their plan was better. So all you're taking here is knowledge, and knowledge alone is not sufficient under the statute. The wire fraud evidence was also insufficient. The statute requires obtaining of property by means of a misrepresentation. It's not enough to have someone obtain property and have some false statement somewhere else temporally or logically in the process. The statute requires a nexus, and that's what was missing here. The government cites the Carpenter case from the United States Supreme Court. In Carpenter, a Wall Street Journal reporter knows that his article will have an effect on the stock market. For a fee, he discloses in advance to stockbrokers, and they all do insider trading. There, the Supreme Court found that the government had met all the elements, and that there was a convergence between them. There was a logical and temporal convergence. The reporter was deceiving his newspaper and misappropriating the journal's property, conveying to others. That constituted the fraud, because there was a nexus between the deceit and the taking of property. This case is distinguishable from the Carpenter case. The 404B evidence issue, we believe that the 404B challenge was preserved here. There was an eliminate motion filed early on. The defense prevailed. There was an interlocutory appeal by the government. The defense prevailed. And when there was, as the case came to trial, the government dumped a late batch of discovery onto the defense counsel. That spawned two more eliminate motions or pleadings by defense counsel. That's R151 and R156. In addition, counsel brought it up verbally again on the record. Judge Botani said, I don't want to talk about that now. Object as they are proffered. So when the tape comes up, the very first clip, he doesn't object to the first clip, but during clip number three, that's 26.3, he wants to approach. The judge says, let's complete this first. They finish playing clip number three. He asks to approach again before clip number four. She overrules him at that point, up at the bench. She admits it into evidence. She says it is probative of Chin lying. What happens the next day, and that would be November 8th, confirms our interpretation of this whole preservation issue. The defense counsel moves to strike. Counsel says, all of this testimony by Chris Tazia is forbidden 404B evidence. There was no 404B evidence or notice and it's prejudicial. The trial judge rules on it. She says, it's not 404B material. It's part of the chain of what happened. It's not another crime. The government never claims at any time during that colloquy that there had not been an objection. The purpose of the contemporaneous objection rule is to afford trial counsel an opportunity to cure the problem. This claim was preserved here. The judge understood, everybody understood what the objection was and the judge ruled on it. Thank you, Judge. Good morning. I'm Kathleen Corkin on behalf of the United States. I'd like to address some of the arguments raised by counsel. Firstly, with respect to Defendant Due's argument that there was insufficient evidence on reasonable measures. I'm not going to go through obviously the evidence that was presented, the extensive evidence that was presented. It's clear though from that evidence that GM's policy was not that all information, all documents, all technology containing trade secret information had to be marked classified or secret. There were a number of engineers that testified to that policy that they testified that it was not the case that all trade secret information had to be marked as such. The Chief Information Officer testified as well that that was not the case. The District Court's conclusion that there was an abundance of evidence on reasonable measures is fully supported by the evidence. With respect to Defendant Due's argument that there was insufficient evidence with respect to her intent to convert because she had authorization to possess all the trade secret information. Again, the evidence presented at trial was to the contrary. Defendant Due's manager testified that information that was in her possession and that was found on personal computer devices did not relate to her work. And secondly, when she left GM, she certainly didn't have the authorization to have trade secret information after that point. With respect to Defendant Shin's argument that the evidence was insufficient on intent to convert because Defendant Shin had to know that the technology that he possessed was trade secret information, we would argue first that that argument has been waived. That it was not raised below at the close of the government's proof. It certainly has not been developed in the briefs. It was referenced, but just barely. And that issue is a complex issue. For instance, is Defendant Shin claiming that the government was required to prove that he knew that the technology he possessed met every element of the definition of trade secret? That is, did Defendant Shin have to know the reasonable measures that GM had taken to protect their information? The government's position would be absolutely not that there is no element within the trade secret statute that requires the defendant know that the information within his possession meets the statutory definition of trade secrets. And that would be if that's the position that would be certainly difficult for the government to meet, not necessarily in this case, but in other cases where you have an outsider or hacker who has stolen trade secret information of a company. I don't quite understand. So there's strict liability on that issue? No mens rea is required? No, Your Honor. To the contrary. There are safeguards that are within the other elements of the offense. For instance, the government has to show that the defendants knew that they possessed GM proprietary information. The government has to prove that the defendants knew that they possessed that information without authorization. So they have no claim to the information. They know that they've basically stolen it. And so that would... If the mens rea here, they don't need to know that the evidence is considered to be a trade secret by the owner. They don't need to know that. What do they have to be guilty of in the way of information or knowledge or mens rea? It's the government's position they have to know that they're aware that they possess information that belongs to someone else. Information to which they have no claim. So that would... That would... That would be true of things that aren't trade secrets. They know that they have information that doesn't belong to them. That's correct. That is correct. But the government still has to prove that the information is, in fact, trade secret information to be... to meet its burden with respect to the substantive offense. We still have to show... It's absolutely acceptable to have even though it belongs... They can say, that belongs to GM, but there's no problem with me having it. No, they would have to know that they have no claim to it. They have to know that they have it. They possess it without authorization. That is, they... They... If they said, well, I just thought that I... that it was in the public domain. Well, that wouldn't satisfy, correct? Because the government would have to show that they knew that they did not have a claim to it. Well, they would have a claim to it if it's in the public domain. They wouldn't have the authorization to have it. So... But in this case, I guess what I'm trying to say is that it is a complicated issue. It's not been briefed. The government certainly would have wanted an opportunity to brief that legal issue. In the event the court does, nonetheless, go in that direction, there certainly was evidence in this case that defendant Shin knew that what he possessed was, in fact, trade secrets. The documents, many of them were marked with proprietary warnings. The nature of the technology, we're talking about hybrid vehicle technology, that Shin, in his own email, describes as cutting-edge technology. He certainly didn't get the trade secret technology from the public domain in this case. He didn't get it off the internet. And his various actions constituting consciousness of guilt, his shredding of, among other things, the GM source code indicates that he well knew that what he possessed was, he certainly wasn't entitled to it, and had value and belonged to someone else. With respect to the... ... ... ... ... ... ... ... ... ... ... ... ... You have to have the intent, and she's so instructed the jury, you have to have the intent to convert the trade secret to the economic benefit of someone other than the owner. They had to intend or know that the offense would injure the owner of the trade secret. ... ... ... ... ... ... They were instructed on the elements of the definition of trade secret, including reasonable measures, and the government had to prove, beyond a reasonable doubt, that the technology at issue met the criteria in the definition of trade secrets in 1839. So the government had...